M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
Brandon P. Jack (SBN 325584)
**EMERY REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
916.823.6955 (Tel)
206.441.9711 (Fax)
*anderson@emeryreddy.com*
*gregory@emeryreddy.com*
*brandon@emeryreddy.com*

*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON HOAGLAND-SWEENEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>HIMS & HERS HEALTH, HEALTH, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>1. NEGLIGENCE<br>2. NEGLIGENCE PER SE<br>3. BREACH OF IMPLIED CONTRACT<br>4. BREACH OF FIDUCIARY DUTY<br>5. BREACH OF CONFIDENCE<br>6. VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE §§ 17200, *et seq.*<br>7. VIOLATIONS OF THE CALIFORNIA CONFIDEDENTIALITY OF MEDICAL INFORMATION ACT, CA. CIV. CODE §§ 56, *et seq.*<br>8. VIOLATIONS OF THE CALIFORNIA CUSTOMER RECORDS ACT, CAL. CIV. CODE §§ 1798.80, *et seq.*<br>9. INVASION OF PRIVACY<br>10. UNJUST ENRICHMENT<br>11. VIOLATIONS OF THE CALIFORNIA CONSUMER PRIVACY ACT, CAL. CIV. CODE §§ 1798.100, *et seq.*<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

Plaintiff Brandon Hoagland-Sweeney ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Action against Defendant Hims & Hers Health. Inc. ("Hims" or "Defendant") for its failure to properly safeguard their protected health information and personally identifiable information stored within Defendant's information network. Plaintiff's allegations are based on personal knowledge, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys.

## I. INTRODUCTION

1. This class action arises out of the recent data breach (the "Data Breach") involving Hims, which collected and stored certain personally identifiable information ("PII") and protected health information ("PHI") (collectively, "PII/PHI") of Plaintiff and Class Members that was compromised in a data breach that Defendant publicly disclosed on April 2, 2026 (the "Data Breach" or the "Breach")

2. Plaintiff's claims arise from Defendant's failure to properly secure and safeguard PII/PHI that was entrusted to it, and its accompanying responsibility to store and transfer that information.

3. Hims is a California-based healthcare technology company focused on delivering virtual care solutions. Defendant is headquartered in San Francisco, California.[1]

4. Hims stores significant sensitive PII and PHI. Hims owes a duty to the individuals whose data Hims obtains and maintains. This duty arises because it is foreseeable that the exposure of PII or PHI to unauthorized persons, especially to perpetrators of cyberattacks with nefarious intentions, will result in harm to the affected individuals, including, but not limited to: the invasion of their private data, the sale of their PII/PHI to facilitate identity theft, exposure to scams or phishing frauds, loss of time, economic damages as affected individuals scramble to protect their identities, and/or the countless ways these individuals' peace of mind is destroyed knowing their information is no longer secured.

---

[1] *About Us, Hims & Hers Health, Inc.:* https://www.hims.com/about *(*last accessed Apr. 14, 2026*).*

5. Given the dire consequences of compromised PII/PHI, individuals expect their data to be securely protected. Unfortunately, this trust is misplaced and violated when entities, like Defendant, subject themselves to the risk of cyberattacks.

6. The U.S. Department of Health and Human Services (HHS) has warned organizations who hold PHI of the threat posed by ongoing ransomware attacks. The U.S. Cybersecurity and Infrastructure Agency, the Federal Bureau of Investigation (FBI), and the HHS issued a joint alert on a specific cybercrime group targeting organizations that held PHI.[2]

7. Despite being on notice that it was storing sensitive PII/PHI that is valuable and vulnerable to cyber attackers, Hims failed to take basic security precautions that could have protected Plaintiff's and Class Members' sensitive data.

8. On February 5, 2026, Defendant became aware of a cybersecurity incident on its computer network. Defendant launched an investigation to determine the nature and scope of the incident.[3]

9. Defendant then launched a comprehensive review of the incident to identify the exact types of information compromised as well as identify the information involved in the Data Breach. On March 3, 2026, Defendant identified that PII/PHI related to individuals was affected in the Data Breach.[4]

10. Upon information and belief, the types of PII/PHI that were compromised in the Data Breach include, but are not limited to, names, contact information, dates of birth, and medical information.

11. On or about April 2, 2026, Defendant began sending notification letters to individuals impacted by the Data Breach.[5]

---

[2] Arghire, I., Maor, E., Ferguson, R., Wilson, M., Eston, T., Au, D., Townsend, K., & Kovacs, E. (2022, October 24). *US Healthcare Organizations Warned of 'Daixin Team' Ransomware Attacks*. SECURITY WEEK, *https://www.securityweek.com/us-healthcare-organizations-warned-daixin-team-ransomware-attacks/* (last accessed Apr. 14, 2026).
[3] *See https://oag.ca.gov/system/files/Hims%20%26%20Hers%2C%20Inc.%20-%20Notice%20of%* 20Data%20Event%20-%20CA_0.pdf* (the "Notice Letter") (last visited April 15, 2026).
[4] *Id.*
[5] *Id.*

12.    Plaintiff and Class Members have been victimized by the Data Breach and remain at a continuing and imminent threat of harm, as any combination of this PII/PHI will forever subject them to being targets of fraud, identity theft, misuse, and other wrongdoings.

13.    The Data Breach was a direct result of Hims's failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect PII/PHI. Specifically, Hims disregarded the rights of Plaintiff and Class Members by (a) failing to take adequate and reasonable measures to ensure the security of its databases and IT systems; (b) concealing or otherwise omitting the material fact that it did not have systems in place to safeguard PII/PHI; (c) failing to take available steps to detect and prevent the Data Breach; (d) failing to monitor its databases and IT systems, and to timely detect the Data Breach; and (e) failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

14.    Due to Hims's inadequate security practices, negligence, and other data security shortcomings, affected Class Members face a constant threat of repeated harm. Further, Class Members face threats of crimes such as fraudulent opening of new financial accounts in Class Members' names, taking out fraudulent loans, using Class Members' information to obtain government benefits, filing fraudulent tax returns, and filing false medical claims.

15.    Plaintiff and Class Members retain a significant interest in ensuring that their PII/PHI, which remains in Hims's possession, is protected from further breaches, and seek to remedy the harms suffered as a result of the Data Breach.

16.    Plaintiff, individually and on behalf of similarly situated persons, seeks to recover damages, equitable relief, including injunctive relief designed to prevent a reoccurrence of the Data Breach and resulting injuries, restitution, disgorgement, reasonable costs and attorneys' fees, and all other remedies deemed proper.

## II.    PARTIES

**Plaintiff Brandon Hoagland-Sweeney**

17.    Plaintiff Brandon Hoagland-Sweeney is, and at all relevant times was, a citizen of California, residing in Los Angeles, California. Plaintiff began using Hims's healthcare services

several years ago, and, believing Hims would implement and maintain reasonable security and practices to protect his PII/PHI, Plaintiff provided Hims with his PII/PHI.

18.    Plaintiff has spent several hours monitoring his PII/PHI as a result of the Data Breach. The time spent dealing with these incidents resulting from the Data Breach is time Plaintiff otherwise would have spent on other activities, such as work and/or recreation with his family. Plaintiff plans on taking additional time-consuming, necessary steps to help mitigate the harm caused by the Data Breach, including continually reviewing his accounts for any unauthorized activity.

19.    Plaintiff reasonably expected that Hims would safeguard his PII/PHI, as well as that of his family. Plaintiff would not have trusted Hims with his PII/PHI if he knew that the information collected by Hims would be at risk. Plaintiff has suffered irreparable damage and has been placed at a heightened risk of fraud or identity theft as a result of the Data Breach.

20.    On or about April 15, 2026, pursuant to 1798.150(b) of the CCPA, Plaintiff Hoegland-Sweeney separately provided written notice to Defendant identifying the specific provisions of this title he alleges it has violated. If within 30 days of Plaintiff's written notice to Defendant it fails to "actually cure" its violations of Cal. Civ. Code § 1798.150(a) and provide "an express written statement that the violations have been cured and that no further violations shall occur," Plaintiff will amend this complaint to also seek the greater of statutory damages in an amount no less than one hundred dollars ($100) and up to seven hundred and fifty ($750) per consumer per incident or actual damages, whichever is greater, on behalf of the Class.  *See* Cal. Civ. Code § 1798.150(b).

**Defendant Hims & Hers Health, Inc.**

21.    Defendant is a California-based healthcare technology company focused on delivering virtual care solutions. Defendant is headquartered in San Francisco, California, having its principal place of business located at 2269 Chestnut Street, Suite 523, San Francisco, CA 94123.[6]

### III.    JURISDICTION AND VENUE

22.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(a) and (d), because the matter in controversy, exclusive of

---

[6] Hims & Hers Health, Inc., *supra* note 1.

interest and costs, exceeds the sum of value of five million dollars ($5,000,000), there are in excess of 100 Class Members, the action is a class action in which one of more Class Members are citizens of states different from Defendant, and Defendant is not a government entity.

23.     This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in San Francisco, California, is organized in California, operates in California, and conducts significant business in California.

24.     Venue properly lies in this judicial district because, *inter alia*, Hims maintains its principal place of business in this District; transacts substantial business, has agents in, and is otherwise located in this District; and a substantial part of the conduct giving rise to Plaintiff's claims occurred in this judicial District.

## IV.    FACTUAL ALLEGATIONS

**A.    Defendant's Background and the Data Breach**

25.     Defendant is a California-based healthcare technology company focused on delivering virtual care solutions. Defendant is headquartered in San Francisco, California.[7]

26.     Upon information and belief, Defendant made promises and representations to individuals, including Plaintiff and Class Members, that the PII/PHI collected from them would be kept safe and confidential, and that the privacy of that information would be maintained.[8]

27.     Plaintiff and Class Members provided their PII/PHI to Defendant with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

28.     As a result of collecting and storing the PII/PHI of Plaintiff and Class Members for its own financial benefit, Defendant had a continuous duty to adopt and employ reasonable measures to protect Plaintiff's and the Class Members' PII/PHI from disclosure to third parties.

29.     On February 5, 2026, Defendant became aware of a cybersecurity incident on its IT Network. Defendant launched an investigation to determine the nature and scope of the incident.[9]

---

[7] *Id.*
[8] *Privacy Policy*, Hims & Hers Health, Inc.: https://hims.ca/privacy (last accessed Apr. 14, 2026).
[9] Notice Letter.

30.    The investigation determined that from February 4, 2026, to February 7, 2026, certain tickets sent to Defendant's customer support team were accessed or acquired by unauthorized third-party.[10]

31.    Defendant then launched a comprehensive review of the incident to identify the exact types of information compromised as well as identify the information involved in the Data Breach. On March 3, 2026, Defendant identified that personal information related to individuals was affected in the Data Breach.[11]

32.    Upon information and belief, the following types of PII/PHI that were compromised in the Data Breach include, but are not limited to, names, contact information, dates of birth and medical information.

33.    On April 2, 2026, Defendant issued a public disclosure and began sending notice letters to affected individuals.[12]

34.    Defendant failed to take precautions designed to keep individuals' PII/PHI secure.

35.    While Defendant sought to minimize the damage caused by the Data Breach, it cannot and has not denied that there was unauthorized access to the sensitive PII/PHI of Plaintiff and Class Members.

36.    Individuals affected by the Data Breach are, and remain, at risk that their data will be sold or listed on the dark web and, ultimately, illegally used in the future.

**B.    Data Breaches and the Market for PII/PHI**

37.    Data breaches in the United States have become ubiquitous, with the goal of criminals being to monetize the stolen data.[13]

---

[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] Statista Research Department, *Number of Data Records Exposed Worldwide From 1ˢᵗ Quarter 2020 to 3ʳᵈ Quarter 2025*, STATISTA, https://www.statista.com/statistics/1307426/number-of-data-breaches-worldwide/ (last accessed Apr. 14, 2026).

38.    When a victim's data is compromised in a breach, the victim is exposed to serious ramifications regardless of the sensitivity of the data—including but not limited to identity theft, fraud, decline in credit, inability to access healthcare, as well as legal consequences.[14]

39.    The U.S. Department of Justice's Bureau of Justice Statistics has found that "among victims who had personal information used for fraudulent purposes, 29 percent spent a month or more resolving problems" and that resolution of those problems could take more than a year.[15]

40.    The U.S. Government Accountability Office (GAO) has concluded that it is common for data thieves to hold onto stolen data for extended periods of time before utilizing it for identity theft.[16] In the same report, the GAO noted that while credit monitoring services can assist with detecting fraud, those services do not stop it.[17]

41.    When companies entrusted with consumer data fail to implement industry best practices, cyberattacks and other data exploitations can go undetected for a long period of time. This worsens the ramifications and can even render the harms irreparable.

42.    PII is a valuable commodity for which a black market exists on the dark web, among other places. Personal data can be worth from $1,000-$1,200 on the dark web[18][19] and the legitimate data brokerage industry is valued at more than $250 billion.[20]

---

[14] Identity Theft Resource Center, 2017 Annual Data Breach Year-End Review, /https://www.idtheftcenter.org/wp-content/uploads/images/breach/2017Breaches/2017AnnualDataBreachYearEndReview.pdf (last accessed Apr. 16, 2026).

[15] U.S. Department of Justice, Bureau of Justice Statistics, Victims of Identity Theft, 2014 (Sept. 2015), https://bjs.ojp.gov/content/pub/pdf/vit14.pdf (last accessed Apr. 14, 2026).

[16] U.S. Government Accountability Office Report to Congressional Requesters, Data Breaches – Range of Consumer Risks Highlights Limitations of Identity Theft Services, https://www.gao.gov/assets/700/697985.pdf (last accessed Apr. 14, 2026).

[17] Id.

[18] Ryan Smith, Revealed-how much is personal data worth on the dark web?, INSURANCE BUSINESS MAGAZINE (May 1, 2023), https://www.insurancebusinessmag.com/ca/news/cyber/revealed--how-much-is-personal-data-worth-on-the-dark-web-444455.aspx (last accessed Apr. 14, 2026).

[19] Maria LaMagna, The sad truth about how much your Google data is worth on the dark web, MARKETWATCH, https://www.marketwatch.com/story/spooked-by-the-facebook-privacy-violations-this-is-how-much-your-personal-data-is-worth-on-the-dark-web-2018-03-20 (last accessed Apr. 14, 2026); Emily Wilson, The Worrying Trend of Children's Data Being Sold on the Dark Web, TNW (Feb. 23, 2019), https://thenextweb.com/news/children-data-sold-the-dark-web (last accessed Apr. 14, 2026).

[20] Geoff Williams, Data Brokers: How Personal Data Becomes Business, CNET (Oct. 8, 2025), https://www.cnet.com/tech/services-and-software/data-brokers-how-your-personal-data-becomes-business/ (last accessed Apr. 14, 2026).

43.    Medical data is particularly valuable because unlike other personal information, such as credit card numbers which can be quickly changed, medical data is static. This is why companies possessing medical information, like Defendant, are targeted by cyber-criminals.[21]

44.    A 2021 report by Invisibly, a team of application developers focused on reclaiming users' data, found that personal medical information is one of the most valuable pieces of information within the market for data. The report noted that "[i]t's worth acknowledging that because health care records often feature a more complete collection of the PII User's identity, background, and personal identifying information (PII), health care records have proven to be of particular value for data thieves." While a single SSN might go for $0.53, a complete health care record sells for $250 on average.[22]

| Record Type | Average Price |
| --- | --- |
| Health Care Record | $250.15 |
| Payment Card Details | $5.40 |
| Banking Records | $4.12 |
| Access Credentials | $0.95 |
| Social Security Number | $0.53 |
| Credit Record | $0.31 |
| Basic PII | $0.03 |

45.    Medical records are even worth more than an SSN, credit card, and driver's license combined, according to federal officials. They estimate that medical records can go for anywhere between $250 to $1,000.[23]

---

[21] Caroline Humer & Jim Finkle, *Your medical record is worth more to hackers than your credit card*, REUTERS (Sept. 24, 2014), https://www.reuters.com/article/us-cybersecurity-hospitals/your-medical-record-is-worth-more-to-hackers-than-your-credit-card-idUSKCN0HJ21I20140924 (last accessed Apr. 14, 2026).
[22] *How Much is Your Data Worth? The Complete Breakdown for 2024*, INVISIBLY (Jul. 13, 2021) https://www.invisibly.com/learn-blog/how-much-is-data-worth/ (last accessed Apr. 14, 2026).
[23] Wilkinson, Kate, *RI hospitals fight cyberattacks on 'almost a daily basis'*, WPRI (Oct. 10, 2023), https://www.wpri.com/target-12/ri-hospitals-fight-cyberattacks-on-almost-a-daily-basis/ (last accessed Apr. 14, 2026).

46.    In this black market, criminals seek to sell stolen data to identity thieves who desire the data to extort and harass victims, take over victims' identities in order to open financial accounts, and otherwise engage in illegal financial transactions under the victims' names.

47.    PII has a distinct, high value—which is why legitimate companies and criminals seek to obtain and sell it. As alleged in more detail below, a growing market is for children's data.[24]

48.    Medical information in particular is extremely valuable to identity thieves, and thus, the medical industry has also experienced disproportionally higher numbers of data theft events than other industries. According to a report by the Health Insurance Portability and Accountability Act Journal, "healthcare data breach statistics clearly show there has been an upward trend in data breaches over the past nine (9) years, with 2018 seeing more data breaches reported than any other year since records first started being published."[25]

49.    A study done by Experian found that the "average total cost" of medical identity theft is "about $20,000" per incident, and that most victims of medical identity theft were forced to pay out of pocket costs for healthcare they did not receive to restore coverage.[26] Indeed, data breaches

---

[24] *The Worrying Trend of Children's Data Being Sold on the Dark Web*, TNW (Feb. 23, 2019) https://thenextweb.com/contributors/2019/02/23/children-data-sold-the-dark-web/ (last accessed Apr. 14, 2026).

[25] *Healthcare Data Breach Statistics*, HIPPA JOURNAL, https://www.hipaajournal.com/healthcare-data-breach-statistics/ (last accessed Apr. 14, 2026).

[26] See Elinor Mills, Study: *Medical Identity theft is costly for victims*, CNET (Mar. 3, 2010), https://www.cnet.com/news/privacy/study-medical-identity-theft-is-costly-for-victims/ (last accessed Apr. 14, 2026).

and identity theft have a crippling effect on individuals and detrimentally impact the economy as a whole.

**C.**     **The Sensitivity of Customers' PII/PHI Demands Heightened Protection**

50.     Entities in the healthcare industry are popular targets for cyberattacks and require top-tier security measures to protect PII/PHI, especially given that these databases store sensitive patient records.

51.     Ponemon Institute, an expert in the annual state of cybersecurity, indicated in 2020 that organizations storing PHI were top targets for cyber-attacks. In fact, Defendant has been on notice for years that PHI is a prime target for scammers due to the amount and value of confidential patient information maintained. In 2019 alone, numerous entities in the healthcare sector suffered high-profile data breaches, including Quest Diagnostics and LabCorp. Defendant had resources for years to address its data security: In 2025, Hims had revenue of approximately $2.35 billion.[27]

52.     In a survey released by Ponemon Institute in January 2023, nearly half of respondents (47 percent) said their organizations experienced a ransomware attack in the past two years, up from 43% in 2021. And 45 percent of respondents reported complications from medical procedures due to ransomware attacks, up from 36 percent in 2021.[28]

53.     Countless victims impacted by the Data Breach now face a constant threat of being repeatedly harmed, including but not limited to living the rest of their lives knowing that criminals can compile, build, and amass profiles on them for decades – exposing them to a continuing threat of identity theft, disclosure of PII/PHI, threats, extortion, harassment and phishing scams, and the attendant anxiety from not knowing how one's information will be used when it comes into nefarious individuals' hands.

---

[27] *Hims & Hers Health Health, Inc. Reports Fourth Quarter and Full Year 2025 Financial Results*, HIMS, https://investors.hims.com/news/news-details/2026/Hims--Hers-Health-Inc--Reports-Fourth-Quarter-and-Full-Year-2025-Financial-Results/default.aspx (last accessed Apr. 14, 2026).
[28] Southwick, Ron. *California medical group discloses ransomware attack, more than 3 million affected*, CHIEF HEALTHCARE EXECUTIVE (Feb. 10, 2023), https://www.chiefhealthcareexecutive.com/view/california-medical-group-discloses-ransomware-attack-more-than-3-million-affected (last accessed Apr. 14, 2026).

54.    Additionally, data breaches of this caliber can result in the exposure of extremely sensitive information about children's private medical histories, medical conditions, psychological assessments, psychiatric evaluations, location of schools and residences, and much more, which poses great dangers on its own. The FBI has warned that "widespread collection of student data could have privacy and safety implications if compromised or exploited."[29] According to the FBI, malicious use of sensitive student data "could result in social engineering, bullying, tracking, identity theft, or other means for targeting children."[30] On top of privacy and safety implications, children must also live their entire lives knowing private, sensitive information about their medical histories or conviction records is subject to public exposure at any time.

55.    Due to the special risks associated with individuals' data breaches and the increasing frequency with which they are occurring, it is imperative for entities like Defendant to routinely: (a) monitor for system breaches, cyberattacks and other exploitations; and (b) update their software, security procedures, and firewalls.

**D.    Defendant's Duty to Safeguard PII/PHI**

56.    Defendant collects, receives, and accesses consumers' extensive individually identifiable information. These records include names, dates of birth, as well as PHI in the form of medical information.

57.    The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all decision-making.[31]

58.    The FTC has issued numerous guides for entities engaged in commerce highlighting the importance of reasonable data security practices.

---

[29] Education Technologies: *Data Collection and Unsecured Systems Could Pose Risks to Children*, FBI Alert No. I-091318-PSA (Sept. 13, 2018), https://www.ic3.gov/media/2018/180913.aspx (last accessed Apr. 14, 2026).
[30] *Id*.
[31] Federal Trade Commission, *Start With Security*, https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last accessed Apr. 14, 2026).

59.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cybersecurity guidelines for businesses.[32] The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

60.    The FTC further recommends that entities not maintain PII/PHI longer than needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[33]

61.    The FTC has brought enforcement actions against entities engaged in commerce for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

62.    Plaintiff and Class Members provided their PII/PHI to Hims with the reasonable expectation and mutual understanding that Hims and any of its affiliates would comply with their obligations to keep such information confidential and secure from unauthorized access.

63.    Data security is purportedly a critical component of Hims's business model. In its "Privacy Policy" Hims makes the following statements:

- We strive to use reasonable physical, technical, and administrative measures in an effort to protect personal information from unauthorized access, use, disclosure, alteration, and destruction.
- How we use Health Information:

---

[32]    Federal Trade Commission, *Protecting Personal Information: A Guide for Business*, https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business    (last accessed Apr. 14, 2026).
[33] Federal Trade Commission, *supra* note 33.

- ■ To provide you with health care treatment and related services, including coordinating and managing your health care and informing you of treatment alternatives and other health related benefits that may be of interest to you

- ■ To operate and manage our practice and to promote quality care

- ■ To review the credentials, qualifications and actions of our Healthcare Providers Follow the terms of the notice that is currently in effect

- ■ To bill and collect payment from you, an insurance company, or a third party for the healthcare services we provide

- • A breach of security safeguards can result in risks such as phishing and identity theft. We will address such breaches as required by law. [34]

64.    Hims's failure to provide adequate security measures to safeguard patients' PII/PHI is especially egregious because it operates in a field which has recently been a frequent target of scammers attempting to fraudulently gain access to patients' highly confidential PII/PHI.

65.    Since the Data Breach, Class Members face a constant threat of continued harm. Now that their sensitive personal and medical information – their names, contact information, dates of birth, and medical information – is in possession of cybercriminals, Class Members must worry about being victimized throughout the rest of their lives. Furthermore, data breaches affecting minors' PII/PHI compromises children's whereabouts and routines, subjecting them to the danger of potential attacks, embarrassment, or even kidnapping.

66.    Plaintiff and other similarly situated individuals trusted Hims with sensitive and valuable PII/PHI. Had Hims disclosed to Plaintiff and Class Members that its data systems were not secure and were vulnerable, Plaintiff would not have trusted Hims with such sensitive information. In fact, Hims would have been forced to adopt reasonable data security measures and to comply with state and federal law.

67.    Hims knew or should have known that Plaintiff and Class Members would reasonably rely upon, and trust Hims's  express and implied promises regarding the security and safety of its data and systems.

[34] Hims & Hers Health, Inc., *supra* note 9.

-14-
CLASS ACTION COMPLAINT

68.     By collecting victims' sensitive PII/PHI and failing to protect it by maintaining inadequate security systems, failing to properly archive the PII/PHI, allowing access of third parties, and failing to implement security measures, Hims caused harm to Plaintiff and all affected individuals.

**E.     Plaintiff Brandon Hoagland-Sweeneys' Experience**

69.     As a condition of receiving services from Defendant, Plaintiff was required to supply Defendant with his PII/PHI.

70.     Defendant was in possession of Plaintiff's PII/PHI before, during, and after the Data Breach.

71.     Plaintiff reasonably understood and expected that Defendant would safeguard his PII/PHI and timely and adequately notify him in the event of a Data Breach. Plaintiff would not have allowed Defendant, or anyone in Defendant's position, to maintain his PII/PHI if he believed that Defendant would fail to implement reasonable and industry standard practices to safeguard that information from unauthorized access.

72.     Plaintiff greatly values his privacy and PII/PHI and takes reasonable steps to maintain the confidentiality of his PII/PHI. Plaintiff is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

73.     Plaintiff stores any and all documents containing PII/PHI in a secure location and destroys any documents he receives in the mail that contain any PII/PHI or that may contain any information that could otherwise be used to compromise his identity and credit card accounts. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

74.     As a result of the Data Breach, Plaintiff has spent several hours researching the Data Breach, reviewing his bank accounts, monitoring his credit report, and other necessary mitigation efforts. This is valuable time that Plaintiff spent at Defendant's direction and that he otherwise would have spent on other activities, including but not limited to work and/or recreation.

75.     As a consequence of and following the Data Breach, Plaintiff has experienced a significant uptick in spam calls, messages, and emails.

76.    The Data Breach has caused Plaintiff to suffer stress and anxiety, which has been compounded by Defendant's delay in noticing him of the fact that his PII/PHI was acquired by criminals as a result of the Data Breach.

77.    Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. In addition, Plaintiff will continue to be at present and continued increased risk of identity theft and fraud for years to come.

78.    Plaintiff has a continuing interest in ensuring that his PII/PHI, which upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

79.    As a direct and traceable result of the Data Breach, Plaintiff suffered actual injury and damages after his PII/PHI was compromised and stolen in the Data Breach, including, but not limited to:

    a.  lost time and money related to monitoring his accounts and credit reports for fraudulent activity;

    b.  loss of privacy due to his PII/PHI being accessed and stolen by cybercriminals;

    c.  loss of the benefit of the bargain because Defendant did not adequately protect his PII/PHI;

    d.  emotional distress because identity thieves now possess his first and last name paired with other sensitive information;

    e.  imminent and impending injury arising from the increased risk of fraud and identity theft now that his PII/PHI has been stolen and likely published on the dark web;

    f.  diminution in the value of his PII/PHI, a form of intangible property that Defendant obtained from Plaintiff; and other economic and non-economic harm.

F.    **Hims's Failure to Protect Against the Data Breach and its Impact on the Class**

80.    Plaintiff and Class Members have suffered actual harm as a result of Hims's conduct. Hims failed to institute adequate security measures and neglected system vulnerabilities that led to the Data Breach. This Breach allowed hackers to access the PII/PHI of Plaintiff and Class Members.

81.     As explained above, exposure of this information to the wrong people can have serious consequences. The impact of identity theft can have ripple effects, which can adversely affect the future financial trajectories of victims' lives. For example, the Identity Theft Resource Center reports that identity theft can impact an individual's ability to get credit cards and obtain loans, such as student loans or mortgages.[35] For some victims, this could mean the difference between going to college or not, becoming a homeowner or not, or having to take out a high interest payday loan versus a lower-interest loan.

82.     The U.S. GAO found that, "once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years."[36]

83.     There may also be a significant time lag between when personal information is stolen and when it is actually misused. According to the GAO, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[37]

84.     As a direct and proximate result of Hims's breach of confidence and failure to protect the PII/PHI of individuals, Plaintiff and Class Members have been injured by facing ongoing, imminent, impending threats of identity theft crimes, fraud, scams, and other misuse of this PII/PHI, resulting in ongoing monetary loss and economic harm, loss of value of privacy and confidentiality of the stolen PII/PHI, illegal sales of the compromised PII/PHI on the black market, mitigation expenses and time spent on credit monitoring, identity theft insurance, credit freezes/unfreezes, expenses and time spent in initiating fraud alerts, contacting third parties, decreased credit scores,

---

[35] *Identity Theft: The Aftermath 2017*, IDENTITY THEFT RESOURCE CENTER, https://www.idtheftcenter.org/wp-content/uploads/images/page-docs/Aftermath_2017.pdf (last accessed Apr. 14, 2026).
[36] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, U.S. GOV'T ACCOUNTABILITY OFF. (June 2007), https://www.gao.gov/new.items/d07737.pdf (last accessed Apr. 14, 2026).
[37] *Id.*

-17-
CLASS ACTION COMPLAINT

lost work time, and other injuries. Hims, through its misconduct, has enabled numerous bad actors to sell and profit from PII/PHI that belongs to Plaintiff and Class Members.

85.    But for Hims's unlawful conduct, scammers would not have access to Plaintiff's and Class Members' PII/PHI. Hims's unlawful conduct has directly and proximately resulted in a widespread threat of digital attacks against Plaintiff and Class Members.

86.    This Data Breach creates a heightened security concern for the affected individuals, including Plaintiff and Class Members, because their PII/PHI and health-related information, including unique medical records and other sensitive health information is disclosed. Medical privacy is among the most important tenets of American healthcare. Patients must be able to trust their physicians, insurers, and pharmacies to protect their medical information from improper disclosure including, but not limited to, their health conditions and courses of treatment. Indeed, numerous state and federal laws require this. And these laws are especially important when protecting individuals with highly sensitive or private medical conditions disclosure of which can and do subject them to regular discrimination or ridicule.

87.    Plaintiff and Class Members face ongoing, imminent threats of similar fraud claims and scams, resulting in ongoing monetary loss and economic harm; mitigation expenses and time spent on credit monitoring, credit freezes/unfreezes; expenses and time spent in initiating fraud alerts; contacting third parties; decreased credit scores; lost work time; and other injuries.

88.    As a result of the Data Breach, Plaintiff and Class Members have spent significant time and effort researching the Breach, monitoring their accounts for fraudulent activity, reviewing unsolicited emails and texts, and answering telephone calls.

89.    Breach victims have spent significant time monitoring personal accounts (banking, credit monitoring, financial applications, and even other applications/accounts that may be attacked) for fraudulent activity. Many breach victims have had to change their passwords and associated accounts which may be connected to various pieces of stolen PII/PHI. Plaintiff and Class Members have been monitoring their credit activity, living in constant fear and apprehension of further attacks.

90.    Plaintiff and other Class Members also have spent significant time researching and comparing various identity protection services, such as Equifax and Experian. Had Plaintiff and Class Members been able to trust that Hims would vigilantly protect their data, they would not have to take drastic action, and invest significant time and energy, to protect their PII/PHI themselves.

91.    Phishing and other targeted attacks result from data breaches that disclose PII/PHI. Phishing scammers use emails and text messages to trick people into giving them their personal information, including but not limited to passwords, account numbers, and social security numbers. Phishing scams are frequently successful, and the FBI reported that Americans lost approximately $57 million to such scams in 2019 alone.[38]

92.    Such scams trick individuals into giving account information, passwords, and other valuable personal information to scammers. This significantly increases the risk of further substantial damage to Plaintiff and Class Members, including, but not limited to, monetary and identity theft. Due to the Breach, Plaintiff and Class Members now need to spend a substantial amount of time and effort discerning genuine emails from emails trying to phish their PII/PHI.

93.    Given the highly sensitive nature of the information stolen, and its dissemination to unauthorized parties, Plaintiff has already suffered injury and remains at a substantial and imminent risk of future harm.

94.    Plaintiff and Class Members are now forced to research and subsequently acquire medical monitoring and protection services and maintain these services to avoid further impact. Plaintiff anticipates additional out-of-pocket expenses to pay for these services.

95.    In sum, Plaintiff and similarly situated patients have been injured as follows due to the Data Breach:

    a.    Theft of their PII/PHI and the resulting loss of privacy rights in that information;

    b.    Improper disclosure of their PII/PHI;

    c.    Loss of value of their PII/PHI;

---

[38]    *How to Recognize and Avoid Phishing Scams*, FTC CONSUMER ADVICE, https://consumer.ftc.gov/articles/how-recognize-and-avoid-phishing-scams (last accessed Apr. 14, 2026).

d. The amount of ongoing reasonable identity defense and credit monitoring services made necessary as mitigation measures;

e. Hims's retention of profits attributable to Plaintiff's and other Class Members' PII/PHI that Hims failed to adequately protect;

f. Economic and non-economic impacts that flow from imminent, and ongoing threat of fraud and identity theft to which Plaintiff and Class Members are now exposed to;

g. Ascertainable out-of-pocket expenses and the value of their time allocated to fixing or mitigating the effects of this Data Breach; and

h. Emotional distress, and fear associated with the imminent threat of harm from the continued phishing scams and attacks as a result of this Data Breach.

## V. CLASS ALLEGATIONS

96. Plaintiff brings this action on behalf of himself and the following Class pursuant to Federal Rule of Civil Procedure 23(a) and (b):

> All individuals who are residents of the United States whose PII and/or PHI were compromised in the Data Breach publicly announced by Defendant in April 2026 (the "Nationwide Class").

97. Plaintiff also brings this action on behalf of himself and the following California Subclass pursuant to Federal Rule of Civil Procedure 23(a) and (b):

> All individuals who are California citizens whose PII and/or PHI were compromised in the Data Breach publicly announced by Defendant in April 2026 ("California Subclass").

98. The Nationwide Class and the California Subclass shall collectively be referred to hereinafter as the "Class" unless otherwise specified.

99. Excluded from the Class are: (1) the Judges presiding over the Action, Class Counsel, and members of their families; (2) Hims and its subsidiaries, parent companies, successors, predecessors, and any entity in which Hims or its parents, have a controlling interest, and its current

or former officers and directors; (3) Persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded Persons. The class may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

100.   **Numerosity**. The class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will benefit the parties and the Court. Though the exact number and identities of Class Members are unknown at this time, based on information and belief, the Class consists of thousands of Defendant's current and former patients whose data was compromised in the Data Breach. The identities of Class Members are ascertainable through Defendant's books and records.

101.   **Commonality and Predominance**. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented in that the Class was exposed to the same common and uniform breach of Hims's duty and reliance on Hims's ability to protect Class Members' data. The questions of law and fact common to the Class predominate over questions which may affect Plaintiff and individual Class Members. Common questions of law and fact include, but are not limited to, the following:

    a.   Whether Hims's conduct is an unlawful business act or practice within the meaning of Business and Professions Code §§ 17200, *et seq.*;

    b.   Whether Hims's conduct is an unfair business act or practice within the meaning of Business and Professions Code §§ 17200, *et seq.*;

    c.   Whether Hims's conduct is in violation of California Civil Code §§ 1798, *et seq.*;

    d.   Whether Hims's conduct is in violation of California Civil Code §§ 56, *et seq.*;

    e.   Whether Hims's failure to implement effective security measures to protect Plaintiff's and Class Members' PII/PHI was negligent;

    f.   Whether Hims represented to Plaintiff and the Class that it would protect Plaintiff's and Class Members' PII/PHI;

g. Whether Hims owed a duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their PII/PHI;

h. Whether Hims breached a duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their PII/PHI;

i. Whether Class Members' PII/PHI was accessed, compromised, or stolen in the Breach;

j. Whether Hims's conduct caused or resulted in damages to Plaintiff and Class Members;

k. Whether Hims's failed to notify the public of the Breach in a timely and adequate manner;

l. Whether Hims knew or should have known that its systems were vulnerable to a data breach;

m. Whether Hims adequately addressed the vulnerabilities that allowed for the Data Breach; and

n. Whether, as a result of Hims's conduct, Plaintiff and the Class are entitled to injunctive relief.

102. **Typicality**. Plaintiff's claims are typical of the claims of Class Members. Plaintiff's and Class Members' claims are based on the same legal theories and arise from the same unlawful and willful conduct. Plaintiff and Class Members each had their PII and PHI exposed and/or accessed by an unauthorized third party.

103. **Adequacy**. Plaintiff is an adequate representative of the Class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the Class Members and has no interests antagonistic to the interests of the Class Members. In addition, Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation. The claims of Plaintiff and the Class Members are substantially identical, as explained above.

104. **Superiority**. This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this

controversy, and joinder of all Class Members is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense, and promote uniform decision-making.

105.    The litigation and resolution of Class Members' claims are manageable. Individual litigation of the legal and factual issues raised by Hims's conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

106.    Plaintiff and Class Members have suffered injury in fact as a result of Hims's false, deceptive, and misleading representations. Plaintiff would not have sought services from, provided PII/PHI to, or otherwise have their PII/PHI provided to Hims but for the reasonable belief that Hims would safeguard Plaintiff's PII/PHI.

107.    The class is identifiable and readily ascertainable. Notice can be provided to such affected individuals using techniques and a form of notice similar to those customarily used in class actions, and by internet publication, radio, newspapers, and magazines. Further, Hims already has identified and sent a letter to affected Class Members.

108.    Hims has acted on grounds generally applicable to the entire class, thereby making final and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Hims.

109.    Absent a class action, Hims will likely retain the benefits of its wrongdoing. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Hims's conduct. It would be virtually impossible for Class Members individually to redress effectively the wrongs done to them by Hims. Even if Class Members could afford such individual litigation, the

court system could not. Absent a representative action, the Class Members will continue to suffer losses and Hims (and similarly situated companies) will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
**(On Behalf of Plaintiff and the Class)**

110.    Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

111.    Hims owed a duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their PII/PHI. This duty included but was not limited to: (a) designing, implementing, and testing security systems to ensure that individuals' PII/PHI was consistently and effectively protected; (b) implementing security systems that are compliant with state and federal mandates; (c) implementing security systems that are compliant with industry practices; and (d) promptly detecting and notifying affected parties of a data breach.

112.    Hims also had a duty to destroy Plaintiff's and Class Members' PII/PHI within an appropriate amount of time after it was no longer required by Hims, in order to mitigate the risk of the stale PII/PHI being compromised in a data breach.

113.    Hims's duties to use reasonable care arose from several sources, including those described below. HIMS had a common law duty to prevent foreseeable harm to others, including Plaintiff and Class Members, who were the foreseeable and probable victims of any inadequate security practices.

114.    Hims had a special relationship with Plaintiff and Class Members, which is recognized by laws and regulations, as well as common law. Hims was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach. Plaintiff and Class Members were compelled to entrust Hims with their PII/PHI. At relevant times, Plaintiff and Class Members understood that Hims would take adequate security

precautions to safeguard that information. Only Hims had the ability to protect Plaintiff's and Class Members' PII/PHI stored on Hims's servers.

115.    Hims knew or should have known that Plaintiff's and the Class Members' PII/PHI is information that is frequently sought after by hackers.

116.    Hims knew or should have known that Plaintiff and the Class Members would suffer harm if their PII/PHI was leaked.

117.    Hims knew or should have known that its security systems were not adequate to protect Plaintiff's and the Class Members' PII/PHI from a data breach, especially in light of the increase in data breaches in the healthcare sector.

118.    Hims knew or should have known that adequate and prompt notice of the Data Breach was required such that Plaintiff and the Class could have taken more swift and effective action to change or otherwise protect their PII/PHI, rather than waiting until two months after the Breach to notify affected individuals. Hims failed to provide timely notice upon discovery of the Data Breach.

119.    Hims's conduct as described above constituted an unlawful breach of its duty to exercise due care in collecting, storing, and safeguarding Plaintiff's and the Class Members' PII/PHI by failing to design, implement, and maintain adequate security measures to protect this information. Moreover, Hims did not implement, design, or maintain adequate measures to detect a data breach when it occurred or adopt sufficient measures to notify affected parties in the event of a data breach.

120.    Hims's conduct as described above constituted an unlawful breach of its duty to provide adequate and prompt notice of the Data Breach.

121.    Hims entered a special relationship when Plaintiff and Class Members entrusted Hims to protect their PII/PHI. Plaintiff and the Class trusted Hims and, in doing so, provided Hims with their PII/PHI, based upon Hims's representations that it would implement adequate systems to secure their information.

122.    Hims breached its duty in this relationship to implement and maintain reasonable measures to protect Plaintiff's and Class Members' PII/PHI.

123. Plaintiff's and Class Members' PII would have remained private and secure had it not been for Hims's wrongful and negligent breach of their duties. The leak of Plaintiff's and Class Members' PII/PHI, and all subsequent damages, was a direct and proximate result of Hims's negligence.

124. Hims's negligence was, at least, a substantial factor in causing Plaintiff's and Class Members' PII/PHI to be improperly accessed, disclosed, and otherwise compromised, and in causing the Class Members' other injuries because of the Data Breach.

125. The damages suffered by Plaintiff and Class Members were the direct and reasonably foreseeable result of Hims's negligent breach of its duties to adequately design, implement, and maintain security systems to protect Plaintiff's and Class Members' PII/PHI. Hims knew or should have known that its security for safeguarding Plaintiff's and Class Members' PII/PHI was vulnerable to a data breach.

126. Hims's negligence directly caused significant harm to Plaintiff and the Class. Specifically, Plaintiff and the Class are now vulnerable to numerous attacks, including various phishing scams and identity theft.

127. Hims had a fiduciary duty to protect the confidentiality of its communications with Plaintiff and Class Members by virtue of the explicit privacy representations Hims made to Plaintiff and Class Members when it sought, collected, created, and stored their PII/PHI.

128. Hims had information relating to Plaintiff and Class Members that it knew or should have known to be confidential.

129. Plaintiff's and Class Members' communications with Hims about sensitive PII/PHI information and their status as patients were not matters of general knowledge.

130. Hims breached its fiduciary duty of confidentiality by designing its data protection systems in a way to allow for a data breach of massive caliber.

131. At no time did Plaintiff or Class Members give consent to Hims's conduct.

132.    As a direct and proximate cause of Hims's actions, Plaintiff and the Class suffered damage in that the information they intended to remain private is no longer so and their PII/PHI was disclosed without their knowledge or consent.

## COUNT II
## NEGLIGENCE PER SE
### (On Behalf of Plaintiff and the Class)

133.    Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

134.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by entities such as Hims or failing to use reasonable measures to protect PII/PHI. Various FTC publications and orders also form the basis of Hims's duty.

135.    Hims violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII/PHI and not complying with the industry standards. Hims's conduct was particularly unreasonable given the nature and amount of PII and PHI it obtained and stored and the foreseeable consequences of a data breach that disclosed Plaintiff and the Class's PII and PHI to unauthorized third parties.

136.    Hims violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect personal information and not complying with industry standards. Hims's conduct was particularly unreasonable given the nature and amount of personal information it obtained and stored and the foreseeable consequences of a data breach that disclosed patients' PII/PHI to unauthorized third parties.

137.    Hims's violation of Section 5 of the FTC Act (and similar state statutes) constitutes negligence per se. This negligence was, at least, a substantial factor in causing Class Members' PII/PHI to be improperly accessed, disclosed, and otherwise compromised, and in causing Class Members' other injuries as a result of the Data Breach.

138.    Plaintiff and Class Members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes) was intended to protect as they are natural persons. In

addition, the harm that Class Members have suffered is the type of harm that the FTC Act (and similar state statutes) were intended to prevent. Indeed, the FTC has pursued over fifty enforcement actions against businesses that, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same or similar harm suffered by Class Members.

139. Hims also violated other laws in allowing and as a result of the Data Breach, including HIPAA, the California Unfair Competition Law, the California Customer Records Act, and the California Confidentiality of Medical Information Act.

140. As a direct and proximate result of Defendant's violation of law and its negligence, Plaintiff and Class Members have been injured, and are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

141. Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

142. In connection with receiving healthcare treatment and services, Plaintiff and Class Members entered implied contracts with Hims.

143. Pursuant to these implied contracts, Plaintiff and Class Members paid money to Defendant, whether directly or through their insurers, and provided Defendant with their PII/PHI. In exchange, Defendant agreed to, among other things, and Plaintiff understood that Defendant would: (1) provide medical treatment, services, or health plan benefits to Plaintiff and Class Members; (2) take reasonable measures to protect the security and confidentiality of Plaintiff's and Class Members' PII/PHI; and (3) protect Plaintiff's and Class Members' PII/PHI in compliance with federal and state laws and regulations and industry standards.

144. The protection of PII/PHI was a material term of the implied contracts between Plaintiff and Class Members, on the one hand, and Hims, on the other hand. Had Plaintiff and Class Members known that Hims would not adequately protect PII/PHI they would not have done business with Hims.

145. Plaintiff and Class Members performed their obligations under the implied contract when they provided Hims with their PII/PHI.

146. Hims breached its obligations under its implied contracts with Plaintiff and Class Members by failing to implement and maintain reasonable security measures to protect their PII/PHI.

147. The damages sustained by Plaintiff and Class Members as described above were the direct and proximate result of Hims's material breaches of its agreements.

148. Plaintiff and Class Members were damaged by Hims's breach of implied contracts because: (i) they have suffered actual harm or identity theft; (ii) they face a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their PII/PHI was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their PII/PHI has been breached; (v) they were deprived of the value of their PII/PHI, for which there is a well-established national and international market; (vi) they were deprived of the benefit of their bargain; and/or (vii) they lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face.

**COUNT IV**
**BREACH OF FIDUCIARY DUTY**
**(On Behalf of Plaintiff and the Class)**

149. Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

150. Plaintiff and Class Members have an interest, both equitable and legal, in the PII and PHI that was conveyed to, collected by, and maintained by Defendant and that was ultimately accessed or compromised in the Data Breach.

151. As a healthcare provider, Defendant has a fiduciary relationship to its patients. By providing healthcare services for Plaintiff and the Class, Defendant has a duty to act in good faith and solely for the benefit of Plaintiff and Class Members in all matters related to their healthcare.

152.    Defendant is in possession of individuals' PII, PHI, and confidential medical information that are not generally known. Plaintiff is very careful with PII and PHI and does not disclose PII/PHI of Plaintiff's own accord.

153.    Plaintiff and Class Members neither consented to nor authorized the disclosure of their PII/PHI to a criminal actor.

154.    Defendant was negligent in the maintenance of its computer systems in which Plaintiff's and Class Members' PII and PHI were stored. Defendant knew, or should have known, that the PII/PHI stored in their systems could be exploited at great cost to Plaintiff and the Class.

155.    Plaintiff has suffered concrete injuries as a result of Plaintiff's PII and PHI being exposed in the Data Breach.

156.    Plaintiff has dedicated significant time to dealing with, and mitigating, the impacts of the Data Breach. As discussed *supra*, cybercriminals may store individuals' PII and PHI for years before using it for fraudulent activity. After Hims's offer of credit monitoring expires, any credit monitoring services that Plaintiff requires must be purchased out of pocket. Due to the breadth of PII/PHI compromised in the Data Breach, Plaintiff may need credit and medical monitoring services for the rest of Plaintiff's life.

157.    Beyond the impending risk of identity or medical fraud, Plaintiff and Class Members have suffered emotional distress from the exposure of their private medical information.

158.    Further, Plaintiff and Class Members have suffered damage to and diminution of the value of their PII and PHI. Individual pieces of PII/PHI have an ascertainable monetary value, as evidenced by the prices cybercriminals charge for them.

159.    As a healthcare provider, Defendant breached its fiduciary duty to patients by, among other things: (a) mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of patient information that resulted in the unauthorized access and compromise of PII and PHI; (b) mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks; (c) failing to design and implement information safeguards to control these risks; (d) failing to adequately test and monitor

the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust its information security program in light of the circumstances alleged herein; (f) failing to follow its own privacy practices; and (g) making an unauthorized and unjustified disclosure and release of Plaintiff and the Class Members' PHI and medical records/information to a criminal third party.

160.    Defendant's breach of its fiduciary duty to its patients was a real factor in bringing about Plaintiff's and Class Members' injuries. But for Defendant's failure to properly secure its computer systems, Plaintiff would not be required to spend time, money, and effort to protect themselves from imminent fraud.

161.    In addition to Defendant's duty to keep Plaintiff's and Class Member's PII/PHI confidential, Defendant failed to safeguard PII and PHI that Plaintiff and the Class had no choice but to provide to receive healthcare services. The imbalance of power between Plaintiff and Defendant further indicates that Defendant owed, and subsequently breached, a fiduciary duty to its patients.

162.    As a direct and proximate result of Defendant's breach of its fiduciary duty, Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, and/or disgorgement or restitution, in an amount to be proven at trial.

## COUNT V
## BREACH OF CONFIDENCE
### (On Behalf of Plaintiff and the Class)

163.    Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

164.    At all times during Plaintiff's and Class Members' interactions with Defendant, Defendant was fully aware of the confidential and sensitive nature of Plaintiff's and Class Members' PII/PHI it held.

165.    Defendant's relationship with Plaintiff and Class Members was governed by terms and expectations that Plaintiff's and Class Members' PII/PHI would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

166.    Plaintiff and Class Members provided their PII/PHI to Defendant with the explicit and implicit understanding that Defendant would protect and not permit the PII/PHI to be disseminated to any unauthorized third parties.

167.    Plaintiff and Class Members provided their PII/PHI to Defendant with the explicit and implicit understanding that Defendant would take reasonable and industry standard precautions to protect their PII/PHI from unauthorized disclosure.

168.    Defendant voluntarily received in confidence Plaintiff's and Class Members' PII/PHI with the understanding that PII/PHI would not be disclosed or disseminated to unauthorized third parties or to the public.

169.    Due to Defendant's failure to prevent or avoid the Data Breach, Plaintiff's and Class Members' PII/PHI was disclosed and misappropriated to unauthorized third parties beyond Plaintiff's and Class Members' confidence, and without their express permission.

170.    As a proximate result of such unauthorized disclosures, Plaintiff and Class Members suffered damages.

171.    But for Defendant's disclosure of Plaintiff's and Class Members' PII/PHI in violation of the parties' understanding of confidence, their PII/PHI would not have been compromised, stolen, viewed, access, and used by unauthorized third parties.

172.    The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's inadequate security of Plaintiff's and Class Members' PII/PHI. Defendant knew or should have known that its methods of accepting, storing, transmitting, and using Plaintiff's and Class Members' PII/PHI were inadequate.

173.    As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury, including but not limited to: (i) threat of identity theft; (ii) the loss of the opportunity in how their PII/PHI is used; (iii) the compromise, publication, and/or theft of their PII/PHI; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII/PHI; (v) the continued risk to their PII/PHI, which may remain in Defendant's possession and is subject to further unauthorized

disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect it; and (vi) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII/PHI compromised as a result of the Data Breach for the rest of Plaintiff's and the Class Members' lives.

174.     As a direct proximate result of such unauthorized disclosures, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

**COUNT VI**
**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**
**BUSINESS & PROFESSIONS CODE §§ 17200,** *et seq.*
**(On Behalf of Plaintiff and the Class)**

175.     Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

176.     This claim is pleaded on behalf of Plaintiff and Class Members in the State of California.

177.     The California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq.* ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising, as defined by the UCL and relevant case law.

178.     By reason of Defendant's above-described wrongful actions, inactions, and omissions, the resulting Data Breach, and the unauthorized disclosure of Plaintiff's and Class Members' PII/PHI, Defendant engaged in unlawful, unfair, and fraudulent practices within the meaning of the UCL.

179.     Defendant's business practices, as alleged herein, were unfair because they offend established public policy and are immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, in that the private and confidential PII/PHI of consumers has been compromised for all to see, use, or otherwise exploit.

-33-
CLASS ACTION COMPLAINT

180. Defendant's above-described wrongful actions, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff's and Class Members' PII/PHI also constitute "unfair" business acts and practices within the meaning of Business & Professions Code §§17200 *et seq.*, in that Defendant's conduct was substantially injurious to Plaintiff and Class Members, offensive to public policy, immoral, unethical, oppressive and unscrupulous, and the gravity of Defendant's conduct outweighs any alleged benefits attributable to such conduct.

181. Defendant engaged in unlawful acts and practices with respect to its services by establishing the sub-standard security practices and procedures described herein; by soliciting and collecting Plaintiff's and Class Members' PII/PHI with knowledge that the information would not be adequately protected; by violating the California Confidentiality of Medical Information Act, Cal. Civ. Code § 56, *et seq.*; by violating the other statutes described above; and by storing Plaintiff's and Class Members' PII/PHI in an unsecure electronic environment in violation of HIPAA, which require Defendant to take reasonable methods of safeguarding the PII/PHI of Plaintiff and the Class Members.

182. Defendant's practices were also unlawful and in violation of Civil Code §§ 1798, *et seq.* and Defendant's own Privacy Policy because Defendant failed to take reasonable measures to protect Plaintiff's and Class Members' PII/PHI and failed to take remedial measures such as notifying its patients when it first discovered that their PII/PHI may have been compromised.

183. In addition, Defendant engaged in unlawful acts and practices by failing to disclose the Data Breach in a timely and accurate manner, contrary to the duties imposed by Cal. Civ. Code § 1798.82 and Cal. Health & Safety Code §1280.15(b)(2).

184. Defendant's business practices, as alleged herein, were fraudulent because they were likely to deceive consumers into believing that the PII/PHI they provided to Defendant would remain private and secure when, in fact, it was not private and secure.

185. Plaintiff and Class Members suffered (and continue to suffer) injury in fact and lost money or property as a direct and proximate result of Defendant's above-described wrongful actions,

inactions, and omissions including, *inter alia*, the unauthorized release and disclosure of their PII/PHI.

186.    But for Defendant's misrepresentations and omissions, Plaintiff and Class Members would not have provided their PII/PHI to Defendant or would have insisted that their PII/PHI be more securely protected.

187.    These above-described misrepresentations and omissions emanated from Defendant's conduct in California, where Hims is organized and maintains its principal place of business, including the design and dissemination of its marketing, Privacy Policy, and other representations concerning data security. The unlawful, unfair, and fraudulent business practices alleged herein occurred, originated, and were directed from California, and California has a substantial interest in regulating the conduct of corporations organized and headquartered within its borders, deterring fraud, and protecting consumers—including non-residents—from deceptive business practices emanating from California. Thus, application of the UCL to a nationwide class is appropriate where the wrongful conduct originated in California and no other state has an identifiable interest in denying their residents full recovery under the UCL.

188.    As a direct and proximate result of Defendant's above-described wrongful actions, inactions, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff and Class Members' PII/PHI, they have been injured by, *inter alia*: (1) the loss of the opportunity to control how their PII/PHI is used; (2) the diminution in the value and/or use of their PII/PHI entrusted to Defendant; (3) the compromise, publication, and/or theft of their PII/PHI; (4) the loss of Plaintiff's and Class Members' benefits of their bargains, as they would not have paid for Defendant's services, or would only have been willing to pay substantially less for them, had they known that it would not adequately protect their PII/PHI; and (5) costs associated with monitoring their PII/PHI, amongst other things.

189.    Plaintiff and Class Members seek an order mandating that Defendant implement adequate security practices to protect patients' and consumers' PII/PHI. Additionally, Plaintiff and

Class Members seek and request an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant by means of Defendant's unfair and unlawful practices.

**COUNT VII**
**VIOLATION OF CALIFORNIA CONFIDENTIALITY OF**
**MEDICAL INFORMATION ACT CAL. CIV. CODE §§ 56, *et seq*. ("CMIA")**
**(On Behalf of Plaintiff and the California Subclass)**

171.    Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

172.    Defendant is subject to the requirements and mandates of the CMIA.

173.    CMIA § 56.36 allows an individual to bring an action against a "person or entity who has negligently released confidential information or records concerning him or her in violation of this part."

174.    As a direct result of its negligent failure to adequately protect the data it collected from the Plaintiff and California Subclass Members, Defendant allowed for a data breach which released the PII/PHI of the Plaintiff and California Subclass Members to criminals and/or third parties.

175.    The CMIA defines "medical information" as "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care ... regarding a patient's medical history, mental or physical condition, or treatment."

176.    The CMIA defines individually identifiable information as "medical information [that] includes or contains any element of personal identifying information sufficient to allow identification of the individual, such as the [customers]' name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the individual's identity." Cal. Civ. Code § 56.050.

177.    Defendant is in possession of affected individuals' medical information, including, but not necessarily limited to, doctors, diagnoses, insurance information, medicines, test results, images, care and treatment. Further, the compromised data was individually identifiable because it

was accompanied by elements sufficient to allow identification of the Plaintiff by the third parties to whom the data was disclosed.

178.    Defendant lawfully came into possession of Plaintiff's and California Subclass Members' medical information and had a duty pursuant to Section 56.06 and 56.101 of the CMIA to maintain, store and dispose of the Plaintiff's and California Subclass Members' medical records in a manner that preserved their confidentiality. Sections 56.06 and 56.101 of the CMIA prohibit the negligent creation, maintenance, preservation, storage, abandonment, destruction, or disposal of confidential medical information.

179.    Defendant further violated the CMIA by failing to use reasonable care, and in fact, negligently maintained Plaintiff's and California Subclass Members' medical information.

180.    As a direct and proximate result of Defendant's violations of the CMIA, Plaintiff and California Subclass Members have been injured and are entitled to compensatory damages, punitive damages, and nominal damages of one-thousand dollars ($1,000) for each of Defendant's violations of the CMIA, as well as attorneys' fees and costs pursuant to Cal. Civ. Code § 56.36.

## COUNT VIII
### VIOLATIONS OF THE CALIFORNIA CUSTOMER RECORDS ACT
### CAL. CIV. CODE §§ 1798.80, *et seq.* ("CCRA")
### (On Behalf of Plaintiff and the California Subclass)

181.    Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

182.    "[T]o ensure that personal information about California residents is protected," the California legislature enacted Civil Code § 1798.81.5, which requires that any business that "owns or licenses personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

183.    By failing to implement reasonable measures to protect Plaintiff's and California Subclass  Members' PII/PHI, Defendant violated Civil Code § 1798.81.5.

184. In addition, by failing to promptly notify all affected California Subclass Members that their Personal Information had been exposed, Defendant violated Civil Code § 1798.82.

185. As a direct or proximate result of Defendant's violations of Civil Code §§ 1798.81.5 and 1798.82, Plaintiff and California-based California Subclass Members were (and continue to be) injured and have suffered (and will continue to suffer) the damages and harms described herein.

186. In addition, by violating Civil Code §§ 1798.81.5 and 1798.82, Defendant "may be enjoined" under Civil Code Section 1798.84(e).

187. Defendant's violations of Civil Code §§ 1798.81.5 and 1798.82 also constitute unlawful acts or practices under the UCL, which affords the Court discretion to enter whatever orders may be necessary to prevent future unlawful acts or practices.

188. Plaintiff accordingly requests that the Court enter an injunction requiring Defendant to implement and maintain reasonable security procedures, including, but not limited to: (1) ordering that Defendant utilize strong industry standard data security measures for the collection, storage, and retention of patient data; (2) ordering that Defendant, consistent with industry standard practices, engage third party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis; (3) ordering that Defendant engage third party security auditors and internal personnel, consistent with industry standard practices, to run automated security monitoring; (4) ordering that Defendant audit, test, and train its security personnel regarding any new or modified procedures; (5) ordering that Defendant, consistent with industry standard practices, segment consumer data by, among other things, creating firewalls and access controls so that if one area of Defendant's systems are compromised, hackers cannot gain access to other portions of those systems; (6) ordering that Defendant purge, delete, and destroy in a reasonably secure manner class member data not necessary for its provisions of services; (7) ordering that Defendant, consistent with industry standard practices, conduct regular database scanning and security checks; (8) ordering that Defendant, consistent with industry standard practices, evaluate all software, systems, or programs utilized for collection and storage of sensitive PII/PHI for vulnerabilities to prevent threats to

patients; (9) ordering that Defendant, consistent with industry standard practices, periodically conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and (10) ordering Defendant to meaningfully educate its patients about the threats they face as a result of the loss of their PII/PHI.

189.    Plaintiff further requests that the Court require Hims to identify and notify all California Subclass Members who have not yet been informed of the Data Breach, and to notify affected persons of any future data breaches by email within 24 hours of discovery of a breach or possible breach and by mail within 72 hours.

**COUNT IX**
**INVASION OF PRIVACY**
**(On Behalf of Plaintiff and the Class)**

190.    Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

191.    Plaintiff and Class Members had a reasonable and legitimate expectation of privacy in their PII/PHI that Defendant failed to adequately protect against compromise from unauthorized third parties.

192.    Defendant owed a duty to Plaintiff and Class Members to keep their PII/PHI confidential.

193.    Defendant failed to protect, and released to unknown and unauthorized third parties, the PII/PHI of Plaintiff and Class Members.

194.    By failing to keep Plaintiff's and Class Members' PII/PHI safe, knowingly utilizing unsecure systems and practices, Defendant unlawfully invaded Plaintiff's and Class Members' privacy by, among others, (i) intruding into Plaintiff's and Class Members' private affairs in a manner that would be highly offensive to a reasonable person; (ii) failing to adequately secure their PII/PHI from disclosure to unauthorized persons and/or third parties; and (iii) enabling the disclosure of Plaintiff's and Class Members' PII/PHI without consent.

195.    Defendant knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiff's and Class Members' position would consider its actions highly offensive.

196. Defendant knew, or acted with reckless disregard of the fact that, organizations handling PHI are highly vulnerable to cyberattacks and that employing inadequate security software would render them especially vulnerable to data breaches.

197. As a proximate result of such unauthorized disclosures, Plaintiff's and Class Members' reasonable expectations of privacy in their PII/PHI was unduly frustrated and thwarted, thereby causing Plaintiff and the Class Members undue harm.

198. Plaintiff seeks injunctive relief on behalf of Class Members, restitution, as well as any and all other relief that may be available at law or equity. Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause irreparable injury to Plaintiff and Class Members. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members.

**COUNT X**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

199. Plaintiff realleges and incorporates all previous allegations as though fully set forth herein. This claim is pleaded in the alternative to the contract-based counts.

200. Plaintiff and Class Members conferred a monetary benefit on Defendant—namely, they provided and entrusted Defendant with their valuable PII/PHI. Upon information and belief, Defendant funds its data security measures entirely from payments made by or on behalf of Plaintiff and the Class Members. Accordingly, a portion of such payments made on behalf of Plaintiff and the Class Members is to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Defendant.

201. In exchange for this payment, Plaintiff and Class Members were entitled to reasonable measures to protect their PII/PHI.

202. Defendant appreciated, accepted, and retained the benefit bestowed upon it under inequitable and unjust circumstances arising from Defendant's conduct toward Plaintiff and Class Members as described herein – namely, (a) Plaintiff and Class Members conferred a benefit on

Defendant, and Defendant accepted or retained that benefit; and (b) Defendant used Plaintiff's and Class Members' PII/PHI for business purposes.

203. Defendant failed to secure Plaintiff's and Class Members' PII/PHI and, therefore, did not provide full compensation for the benefit provided on behalf of Plaintiff and Class Members provided.

204. Defendant acquired the PII/PHI through inequitable means in that it failed to disclose its inadequate security practices previously alleged.

205. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members.

206. Under the circumstances, it would be unjust and unfair for Defendant to be permitted to retain any of the benefits conferred on behalf of Plaintiff and Class Members.

207. Under the principles of equity and good conscience, Defendant should not be permitted to retain the PII/PHI belonging to Plaintiff and Class Members because Defendant failed to implement the data management and security measures that industry standards mandate.

208. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received on behalf of and for the benefit of Plaintiff and Class Members.

## COUNT XI
### VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT
### CAL. CIV. CODE §§ 1798.100, *et seq.* ("CCPA")
### (On Behalf of Plaintiff and the California Subclass)

209. Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

210. As more personal information about consumers is collected by businesses, consumers' ability to properly protect and safeguard their privacy has decreased. Consumers entrust businesses with their personal information on the understanding that businesses will adequately protect it from unauthorized access and disclosure. The California Legislature explained: "The unauthorized disclosure of personal information and the loss of privacy can have devasting effects

for individuals, ranging from financial fraud, identity theft, and unnecessary costs to personal time and finances, to destruction of property, harassment, reputational damage, emotional stress, and even potential physical harm.

211. As a result, in 2018, the California Legislature passed the CCPA, giving consumers broad protections and rights intended to safeguard their personal information. Among other things, the CCPA imposes an affirmative duty on businesses that maintain personal information about California residents to implement and maintain reasonable security procedures and practices that are appropriate to the nature of the information collected. Defendant Hims failed to implement such procedures which resulted in the Data Breach.

212. It also requires "[a] business that discloses personal information about a California resident pursuant to a contract with a nonaffiliated third party . . . [to] require by contract that the third party implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure." Cal. Civ. Code § 1798.81.5(c).

213. Section 1798.150(a)(1) of the CCPA provides:

"Any consumer whose nonencrypted or nonredacted personal information, as defined [by the CCPA] is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business' violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for statutory or actual damages, injunctive or declaratory relief, and any other relief the court deems proper."

214. Plaintiff and California resident Class Members are "consumer[s]" as defined by Civ. Code § 1798.140(g) because they are "natural person[s] who [are] California resident[s], as defined in Section 17014 of Title 18 of the California Code of Regulations, as that section read on September 1, 2017."

215. Defendant Hims is a "business" as that term is defined in Cal. Civ. Code § 1798.140(d). Defendant Hims is organized or operated for the profit or financial benefit of its

shareholders or owners. Defendant Hims collects consumers' personal information (including that of Plaintiff and Class Members) or such information is collected on Defendant Hims's behalf, and Defendant Hims determines the purposes and means of the processing of consumers' personal information. Defendant Hims does business in California and has annual revenues well in excess of $25 million dollars

216. The information accessed during the Data Breach constitutes "personal information" as that term is defined in Cal. Civ. Code § 1798.140(v)(1). At a minimum, that information included full names, mailing addresses, dates of birth, and/or medical information.

217. Under the CCPA, Defendant Hims had a duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information that it stored. Cal. Civ. Code § 1798.150(a)(1).

218. Defendant Hims's failure to prevent the Data Breach by implementing and maintaining reasonable security procedures and practices constitutes a breach of its duty under the CCPA.

219. As a result of the Data Breach, the nonencrypted and nonredacted personal information of Plaintiff and Class Members was subject to unauthorized access and exfiltration, theft, or disclosures. The personal information accessed in the Data Breach was nonencrypted and nonredacted, as evidenced by the fact that Defendant was required to provide notification letters under the laws of several states that require notification of unauthorized access to nonencrypted and nonredacted information.

220. On April 15, 2026, Plaintiff provided Defendant Hims with written notice of its violations of the CCPA, pursuant to Civil Code § 1798.150(b)(1). Defendant Hims has to respond within 30 days thereof. If defendant does not respond within 30 days thereof or fails to cure the violation within those 30 days, Plaintiff will amend this Complaint to seek all relief available under the CCPA, including damages to be measured as the greater of actual damages or statutory damages in an amount up to seven hundred and fifty dollars ($750) per consumer per incident. See Cal. Civ. Code § 1798.150(a)(1)(A) & (b).

221.    As a result of Defendant Hims's failure to implement and maintain reasonable security procedures and practices that resulted in the Data Breach, Plaintiff seeks injunctive relief, including public injunctive relief, declaratory relief, and any other relief as deemed appropriate by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, pray for judgment and relief on all causes of action as follows:

A.    For the Court to certify this case as a class action pursuant to Fed. R. Civ. P. 23, that and appoint Plaintiff as a Class Representative, that the undersigned as Class Counsel;

B.    For the Court to enter an order declaring that Defendant's actions, as set forth in this complaint, violate the laws set forth above;

C.    For an order:

(1)    prohibiting Defendant from engaging in the wrongful acts stated herein;

(2)    requiring Defendant to implement adequate security protocols and practices to protect patients' PII/PHI consistent with the industry standards, applicable regulations, and federal, state, and/or local laws;

(3)    mandating that proper notice be sent to all affected parties, and posted publicly;

(4)    requiring Defendant to implement and maintain a comprehensive security program designed to protect the confidentiality and integrity of Plaintiff's and Class Members' PII/PHI;

(5)    requiring Defendant to engage independent third-party security auditors and conduct internal security audit and testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis;

(6)    requiring Defendant to engage independent third-party security auditors and/or internal personnel to run automated security monitoring;

(7)     requiring Defendant to create the appropriate firewalls, and implement the necessary measures to prevent further disclosure and leak of any additional information;

(8)     requiring Defendant to conduct systematic scanning for data breach related issues;

(9)     requiring Defendant to train and test its employees regarding data breach protocols, archiving protocols, and conduct any necessary employee background checks to ensure that only individuals with the appropriate training and access may be allowed to access the PII/PHI data; and

(10)    requiring all further and just corrective action, consistent with permissible law and pursuant to only those causes of action so permitted;

D.     For the Court to award Plaintiff and the Class damages (both actual damages for economic and non-economic harm and statutory damages) in an amount to be determined at trial;

E.     For the Court to issue appropriate equitable and any other relief (including monetary damages, restitution, and/or disgorgement) against Defendant to which Plaintiff and the Class are entitled, including but not limited to restitution and an Order requiring Defendant to cooperate and financially support civil and/or criminal asset recovery efforts;

F.     For the Court to award Plaintiff and the Class pre- and post-judgment interest (including pursuant to statutory rates of interest set under state law);

G.     For the Court to award Plaintiff and the Class their reasonable attorneys' fees and costs of suit;

H.     For the Court to award treble and/or punitive damages insofar as they are allowed by applicable laws; and

I.    For the Court to award any and all other such relief as the Court may deem just and proper under the circumstances.


DATED: April 15, 2026                          Respectfully submitted,

                                               */s/ M. Anderson Berry*
                                               M. Anderson Berry (SBN 262879)
                                               Gregory Haroutunian (SBN 330263)
                                               Brandon P. Jack (SBN 325584)
                                               **EMERY REDDY, PC**
                                               600 Stewart Street, Suite 1100
                                               Seattle, WA 98101
                                               916.823.6955 (Tel)
                                               206.441.9711 (Fax)
                                               *anderson@emeryreddy.com*
                                               *gregory@emeryreddy.com*
                                               *brandon@emeryreddy.com*

                                               *Attorneys for Plaintiff and the Proposed Class*

-46-
CLASS ACTION COMPLAINT